## THOMAS COLLIER *v.* THE STATE.

1. VARIANCE. — An information for willfully and wantonly killing a dumb animal alleged that the animal was the property of one E., but the evidence proved it to be the property of E.'s minor child. *Held*, that it was not necessary to allege the ownership; but, being alleged, it became matter of description, and the variance between the allegation and the proof was fatal to the conviction.

2. FACTS insufficient to sustain a conviction for willfully and wantonly killing a dumb animal.

APPEAL from the County Court of Ellis. Tried below before the Hon. J. D. TEMPLETON, County Judge.

The opinion sufficiently states the case.

*A. A. Kemble,* for the appellant.

*W. B. Dunham,* for the State.

ECTOR, P. J. The information in this case charges " that one George Collier and one Thomas Collier, * * * on the sixth day of July, A. D. one thousand eight hundred and seventy-seven, with force and arms, in the county of Ellis, did then and there, willfully and wantonly, shoot and kill a certain bay mare, the said mare being then and there a dumb animal, and the personal property of one J. W. Embry, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state." The defendants severed on the trial, and on the application of George Collier, Thomas Collier was first tried. He was convicted, and his fine assessed at $35.

He has made the following assignments of error :

" 1. The court erred in overruling the motion for a new trial.

" 2. The evidence is insufficient to support the verdict of the jury.

" 3. Because the testimony shows that the property of

the animal was in a person different from the one alleged in the information.''

. It is not necessary to discuss the first error assigned. The testimony shows that a dark-bay mare, worth $35, the property of a minor daughter of J. W. Embry, was found dead on the prairie on the morning of July 6, 1877. She was lying about 300 yards from the house of George Collier. She had been recently shot. One of the witnesses testified that from the appearance of the wounds he believed she had been shot the night before the dead body was found. The shot-holes entering her body indicated that she was shot with small-sized buck-shot. Sixteen or eighteen shot-holes in the region of her heart and lungs were counted. Several of the witnesses traced the animal by her tracks from the field of George Collier, where there was a broken place or gap in the fence, and where stock had been going in and out, about 200 yards, to where the mare was found dead. She seemed to have been running from within a few steps of the fence to where she was lying. The persons who followed these tracks went to the house of George Collier. George Collier, his wife, and his brother, Thomas Collier, were there. They were told about the mare being killed. George Collier said, '' Yes, his brother Thomas had told him that morning that he had seen one lying down there, dead.'' The Colliers were asked if they had heard any gun fire the night before. George Collier replied in the negative, and said he did not know who killed the mare.

William Morgan, a witness for the State, testified, that a few days before the animal was found dead, '' he had loaned George Collier a gun. Collier had asked him for the gun a few days before he got it, and, when he asked for it, said he wanted to shoot some rabbits. It was an Enfield rifle or musket, and witness shot shot out of it. * * * On the night before he saw the mare dead, witness heard a gun

fired in the night, about twelve or one o'clock; thinks he heard two, but as to the first cannot be certain; that the noise of a gun awoke him, and the dogs were barking, and, after he awoke, he heard another, a gun or pistol, that seemed to be in the direction of Collier's, but could not be at all certain, because he was in the house and in bed, and could not, for that reason, tell the course certainly; but when he got up and went out, the dogs were barking in the direction of Collier's; and this made him think stronger that the gun fired in that direction. Witness lived in about half a mile of George Collier's. Thomas Collier was there temporarily, helping his brother to clean out his crop, as witness understood it. That the horses of Embry were in the field of Collier late in the evening of July 5th; that he saw one of the boys drive them out."

Mrs. Collier testified that Thomas Collier had the gun, shooting rabbits in the cotton, about sundown on the evening of July 5th.

The evidence points to George Collier. as much as it does to Thomas Collier as being the person who shot the animal. His motive for doing it was greater, he being the owner of the crop and premises. His opportunity to do so was as good as that of his brother Thomas. Can it be said that the State proved every material allegation in the indictment with that certainty necessary to sustain the conviction in this case? The fact that the mare was found dead near the farm of George Collier, and that the defendant Thomas Collier said nothing to the parties who went to the house of his brother to inquire about the animal, and the further fact that he was stopping at the house of his brother for a few days, helping him about his crop, when the animal was killed, we believe are not sufficient to connect Thomas Collier with the killing, or to sustain the verdict and judgment herein.

We also believe that the ownership of the animal should

have been proven as alleged, to sustain a conviction in this case. The defendant was charged, under article 2345, Paschal's Digest, with willfully and wantonly killing a dumb animal, the property of J. W. Embry. It was not absolutely necessary to have averred the ownership of the animal, as the protection is to the animal. The pleader, however, having averred the ownership, must be held to the description as given.

The proof of the ownership of the mare, being different from that set out in the information, is fatal to the judgment. The judgment of the County Court is reversed and the cause remanded.

*Reversed and remanded.*